William P. T. PRESTON, Jr., Plaintiff,

v.

UNITED STATES TRUST COMPANY OF NEW YORK, Willard S. Simpkins and Roland L. Redmond, as Trustees under two Deeds of Trust made by William P. T. Preston, Sr., on February 24, 1931 and December 11, 1942, respectively, Elizabeth Preston Hutchings and Doris Preston, Defendants.

Nos. 67 Civ. 1073, 67 Civ. 2020.

United States District Court
S. D. New York.
Sept. 27, 1967.

Baker, Nelson, Williams & Mitchell, New York City, for plaintiff, Harold d'O. Baker, C. Dickerman Williams, Helene E. Schwartz, New York City, of counsel.

Carter, Ledyard & Milburn, New York City, for defendants, Trustees, E. Sheldon Stewart, Stanley F. Reed, Jr., Louis L. Stanton, Jr., New York City, of counsel.

Medina & Miller, New York City, for defendants Elizabeth Preston Hutchings and Doris Preston, Standish F. Medina, New York City, of counsel.

## OPINION

BONSAL, District Judge.

William P. T. Preston, Sr. (the Grantor) who died in 1961, married Fanny, and they have two surviving children, Phyllis (whom plaintiff's attorney seeks to have added as party plaintiff) and the plaintiff, William, Jr. In 1930 the Grantor and Fanny separated, and in May, 1931 they were divorced. The Grantor later married the defendant Doris and they have one surviving child, the defendant Elizabeth. The remaining defendants, Simpkins, Redmond, and U. S. Trust Company, are Trustees of three deeds of trust made by the Grantor in 1931 and 1942.

In his complaint alleging diversity of citizenship, plaintiff asserts two causes of action:

1. that there was a breach of trust by the defendant Trustees in 1942 in that, contrary to the terms of the 1931 Trust, they reduced the principal thereof below two million dollars (to the extent of $464,-740.71) when they transferred to the Grantor property of the value of $1,077,-339.75; the complaint asks that the $464,-740.71 be held by said defendants as constructive trustees for the benefit of plaintiff;

2. that the First 1942 Trust, as executed, failed to effectuate the intent of the Grantor; and that it should be reformed so as to provide that, upon termination, the Grantor's three children and their descendants will share equally, *per stirpes*, in the inheritance from the Grantor.

No claim is made of undue influence, coercion, or fraud by any of the defendants and it is conceded that there was none.

Defendants have moved pursuant to Rules 12(b) and 56(b) of the Federal Rules of Civil Procedure for an order dismissing the action and granting summary judgment on the grounds of *res judicata,* improper venue, and failure to join indispensable parties.

From the complaint, and the affidavits and Exhibits submitted by the parties, the following facts appear:

In 1922, the Grantor's uncle, William B. Thompson, died, leaving his property to his widow, Edith, for life, with remainder to the Grantor. In 1926 the Grantor transferred the remainder to defendants Simpkins and Redmond as Trustees. The Trustees were given the power to terminate the 1926 Trust in whole or in part, in which case the trust property would be returned to the Grantor. The 1926 Trust provided that one-half of the income of the trust be paid to the Grantor and one-half be paid to his wife, Fanny.

In 1930, Grantor and Fanny separated, and in March, 1931, pursuant to a separation agreement, the 1931 Trust was set up with the same Trustees. The Trustees terminated the 1926 Trust and transferred the property consisting of the Thompson estate remainder to the Grantor, who then transferred it, together with some real property, to the Trustees of the 1931 Trust.

### The 1931 Trust

The 1931 Trust provided, to the extent here relevant, that it was to continue "until the death of the Grantor and the death as herein defined of Fanny * * * whichever of said events shall last occur" and, subject to the power of termination given to the Trustees, the principal of the trust at the end of the trust term was to be distributed as follows:

$1,000,000 to the issue of the Grantor and Fanny then living, *per stirpes,* and the balance to such persons as the Grantor shall appoint by will, or, in default of appointment, to his issue then living, *per stirpes*.

During the term of the trust Fanny was to share in the income after the death of Edith (who died in 1941); and upon Fanny's death "as herein defined" Phyllis and William, Jr. were to share therein.

Paragraph Third of the Trust provided that

"for the purposes of this indenture, the intermarriage of said Fanny * * * with any person other than the Grantor shall, for all purposes, be deemed to be equivalent to her death upon the date of said intermarriage, and the expression 'the death as herein defined of said Fanny * * *' shall for all purposes be deemed to mean the natural death of said Fanny * * * or her intermarriage after the date hereof with any person other than the Grantor, whichever of said events shall first occur."

Paragraph Fourth provided that

"at any time or from time to time during the life of the Grantor, the said Trustees shall have power in their absolute discretion * * * to terminate the said trust as to the whole or any part of the principal of said Trust Fund, provided said Trustees shall not, without the consent in writing of said Fanny * * *, terminate said trust as to such an amount that the property constituting the principal of such trust after such termination shall not have a value * * * of at least Two million dollars * * *"

Edith, the life beneficiary under the Thompson will, died in August, 1941, and her will was probated on October 22, 1941. Redmond was appointed as one of the Executors of Edith's will. A final accounting of the proceedings of the Executors of the William Thompson will was submitted to the Trustees of the 1931 Trust. Because of the questions as to allocation of dividends between Edith's estate and the 1931 Trust, the Executors of Edith's will and the Trustees of the 1931 Trust agreed, in December, 1941, that the allocation of dividends was prop-

er, unless otherwise determined in an accounting proceeding to be brought by the Trustees of the 1931 Trust in the New York Supreme Court, Nassau County, in which case the court's determination would be final.

### The 1942 Trusts

In December, 1942 (before the allocation of dividends had been finally determined), the Grantor and Fanny, and Redmond and Simpkins, as Trustees of the 1931 Trust, agreed that the 1931 Trust should be terminated in part and the property delivered to the Grantor; that the Trustees would surrender any power to terminate the 1931 Trust in whole or in part thereafter; that the United States Trust Company should be added as a Trustee; and that the Grantor would dispose of the returned property in a particular manner. In accordance with the agreement, the Grantor

1. paid Fanny $4,000.00;

2. created a trust (First 1942 Trust), with Redmond, Simpkins, and the United States Trust Company as Trustees, to pay the income to the Grantor's second wife, Doris, for her life, and to others, with the remainder to the issue of the Grantor and Doris then living, *per stirpes,* or if none, to the other issue of the Grantor then living, *per stirpes;* and

3. created a second trust (Second 1942 Trust) with the same Trustees, for the benefit of Fanny and others.

Since the contemplated termination of the 1931 Trust would reduce the principal below two million dollars, it was thought necessary to obtain the consent of Fanny, pursuant to Paragraph Fourth of the trust agreement. Fanny conditioned her consent on provision being made for her as aforesaid. The Trustees' accounting shows that $1,077,339.75 was taken out of the 1931 Trust, reducing the value of the principal to $1,535,239.29.

### The 1942 Accounting Proceeding

An accounting proceeding was filed in the Supreme Court, Nassau County, for the purposes of settling the intermediate accounts of the Trustees of the 1931 Trust, determining the allocation of dividends between Edith's estate and the 1931 Trust, and approving the partial termination of the 1931 Trust on the terms and conditions stated above.

A guardian *ad litem* was appointed to represent the Grantor's three children (and others). A Referee to hear and determine held hearings, and approved the accounts and proceedings of the Trustees of the 1931 Trust. The guardian *ad litem* filed his report, making no objections.

By a judgment dated April 12, 1943, the Supreme Court, Nassau County, approved the accounts of the Trustees, which showed the partial termination of the 1931 Trust and the transfer to the Grantor of the property as to which the trust was terminated, and the Trustees were discharged from further liability with respect thereto. A subsequent intermediate accounting was filed in 1956 in which plaintiff, who had attained majority, was served and was a party. No objections were filed therein and the court approved the Trustees' accounts by a final order in 1958.

In 1967, the Grantor having died in 1961, a final accounting was filed by the Trustees in the Supreme Court, New York County. This proceeding is in abeyance pending disposition of plaintiff's claims in this court.

### Defendants' Contentions

The moving defendants contend that the 1943 judgment approving the accounts and proceedings of the Trustees of the 1931 Trust is *res judicata* and bars the raising of the issues in the complaint. In essence, this argument is grounded on the proposition that all of the parties to the present action were represented in the 1942 accounting proceeding and that Fanny's consent to the reduction of the Trust principal below two million dollars, the partial termination of the 1931 Trust, and the transfer of the property to the Grantor to set up the 1942 Trusts, were all fully considered and approved by the court in its judgment. Further, the defendants point out that no objections were filed

and that the guardian *ad litem* approved the accounts as they affected the Grantor's children after fully participating in the hearings before the Referee.

### Plaintiff's Contentions

The plaintiff contends that the 1942 proceedings are not *res judicata* because the guardian *ad litem* in that proceeding did not know of the existence of, and therefore could not raise, the issues now presented. The plaintiff, asserting that the interests of Fanny's children conflicted with those of Doris' children, argues that the guardian *ad litem* represented these conflicting interests without informing the court of the conflict, and was thereby disqualified from acting for both Fanny's and Doris' children.

■ Plaintiff's contentions must be considered in light of the situation which existed at the time of the 1942 accounting. At that time, the Grantor was alive, and indeed he lived until 1961. He was married to Doris and there was no way of knowing how many more children, if any, they might have. Plaintiff and his sister were contingent remaindermen and their interest depended upon their surviving the Grantor and could have been cut off by a termination of the 1931 Trust. Schreyer v. Schreyer, 101 App. Div. 456, 91 N.Y.S. 1065, aff'd 182 N.Y. 555, 75 N.E. 1134 (1905). Since *"nemo est haeres viventis,"* plaintiff could not then have sought equal treatment with the Grantor's children by Doris. Absent a showing of undue influence, collusion, or fraud, the Grantor was free to dispose of his property in such manner as he saw fit during his lifetime. As the judgment states in Paragraph Twentieth, referring to the Thompson remainder, "the interest of said William P. T. Preston in said property has at all times since its creation been fully and freely alienable." The Grantor was under no duty to assure equality among his children and, indeed, could have disinherited all or some of them. Accordingly, the duties of the guardian *ad litem* who represented the Grantor's children in the accounting proceeding were to check the Trustees' accounts to determine whether they had properly accounted for the property in the trust and to determine that the 1942 transactions complied with the trust instrument. As to these duties, there was no conflict between the children of the Grantor, and the judgment approving the Trustees' accounts is binding on this court as *res judicata*. In Re Wade's Will, 270 App.Div. 712, 61 N.Y.S.2d 16 (1946), aff'd, 296 N.Y. 244, 72 N.E.2d 306 (1947). It is of interest in this connection that the plaintiff, though of full age, failed to file objections in the 1958 trustees' intermediate accounting while his father was still alive.

■■ Plaintiff contends that, for the purposes of the 1931 Trust, Fanny was "dead" from the time of her remarriage in 1934 and that, consequently, error was committed in obtaining her consent to the partial termination of the trust on conditions in part specified by her. The short answer to this is that if Fanny was "dead" her consent was unnecessary, and the Trustees could terminate the trust in whole or in part and return the property to the Grantor for any disposition he chose to make. The better interpretation—that which appears to have been followed at the time—is that Fanny was "dead" for the purpose of sharing in the income of the 1931 Trust and for the purpose of being a measuring life of the trust, and that she was alive for the purpose of protecting her children to the extent she saw fit in the event the corpus of the trust was reduced below two million dollars. It is noted that the expression "the death as herein defined of said Fanny B. Preston," which appears in Paragraph Third, was used only in the provision making Fanny an income beneficiary and in the provision measuring the term of the trust, and was not used in Paragraph Fourth relating to the Trustees' power of termination. Here again, absent undue influence, collusion, or fraud, the conditions which Fanny imposed in order to give her consent, which were approved in the accounting proceeding, have become *res judicata*.

■ Plaintiff further argues that the Grantor's "intent" in 1942 was to achieve

equality among his children. But the Grantor's intent in 1942 is best established by what he did, and again in the absence of undue influence, collusion, or fraud, there appears no basis for establishing a different intent in 1967, six years after the Grantor's death.*

Defendants' motion for summary judgment dismissing the complaint is granted on the ground that the complaint fails to state a claim upon which relief can be granted, without prejudice to the plaintiff's asserting any claims he may have in the final accounting proceeding now pending in the New York Supreme Court. Plaintiff's motion for an interlocutory injunction staying the aforesaid proceeding and for the addition of parties in this proceeding is denied.

---

* Grantor's intent was that, upon termination of the 1931 Trust, his issue by Fanny would receive one million dollars, and (subject to the Grantor's power of appointment) would share in any balance with any other issue of Grantor. Plaintiff concedes in his complaint that he and his sister Phyllis will each receive upwards of $1,500,000 from the 1931 Trust, making a total of upwards of three million dollars to the issue of Grantor and Fanny.